**RECEIVED**

**James Everett Shelton**
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

AUG 30 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VINCINAGE**

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>316 Covered Bridge Road<br>King of Prussia, PA 19406<br><br>Plaintiff,<br><br>vs.<br><br>**GALLANT VENTURES LLC dba MERCHANT DIRECT LLC**<br>4 Hopper Ave, Barnegat, NJ 08005<br><br>**DANIEL L. FIORE**<br>4 Hopper Ave, Barnegat, NJ 08005<br>Defendants | Civil Action<br><br>No. 18-13404 MAS-DEA<br><br><br><br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of the GALLANT VENTURES LLC dba MERCHANT DIRECT LLC ("Merchant Direct"), and DANIEL L. FIORE ("Fiore"), collectively "Defendants", in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("Robocalls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

1

### I. Introduction

1. Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff brings this action to challenge Merchant Direct's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Merchant Direct's and Merchant Direct's agents' illegal telephone solicitations by which it markets its products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Merchant Direct's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5. Plaintiff alleges that Defendants made or commissioned numerous telemarketing calls Plaintiff's cellular telephone number for the purposes of advertising Merchant Direct's services, using an automatic telephone dialing system (ATDS) which played a pre-recorded message, which is prohibited by the TCPA.

6. Plaintiff never consented to receive any of these calls.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

2

7. All of the claims asserted herein arise out of Merchant Direct's illegal telephone solicitation campaign and are a common fact pattern.

## II. Jurisdiction and Venue

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this court in that Defendants conduct business in and reside in the State of New Jersey.

## Parties

10. Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11. Defendant GALLANT VENTURES LLC is a Delaware limited liability company, which upon information and belief has a tax identification number 82-2810513, and may be served by and through its CEO, Daniel L. Fiore, at 4 Hopper Ave, Barnegat, NJ 08005. MERCHANT DIRECT LLC is a fictitious name that GALLANT VENTURES LLC uses to conduct business. GALLANT VENTURES LLC, d/b/a MERCHANT DIRECT LLC is not registered to do business in the Commonwealth of Pennsylvania, however, GALLANT VENTURES LLC, d/b/a MERCHANT DIRECT LLC markets and sells, *inter alia*, business loan and/or "merchant cash advance" services to people in Pennsylvania.

12. Upon information and belief, Defendant DANIEL L. FIORE ("Mr. Fiore"), at or about the time the within violations occurred, was owner, CEO, and a Managing Member of GALLANT VENTURES LLC, d/b/a MERCHANT DIRECT LLC. Upon information and belief, Mr. Fiore may be served at his usual place of abode, 4 Hopper Ave, Barnegat, NJ 08005. Mr.

3

Fiore reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Merchant Direct's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in New Jersey, Pennsylvania, and nationwide.

13. At all times herein mentioned, defendants GALLANT VENTURES LLC, d/b/a MERCHANT DIRECT LLC and Mr. Fiore, and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. At all times herein mentioned, the Defendants, and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

15. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

16. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to

engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## Background
### The Telephone Consumer Protection Act

**17.** In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The National Do-Not-Call Registry

**18.** The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**19.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

### The TCPA Prohibits Automated Telemarketing Calls

**20.** The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

5

**21.** According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**22.** The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

6

## The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

**23.** Under the TCPA, an individual such as Mr. Fiore may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 217 (emphasis added).

**24.** When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**25.** Many Courts have relied on the precedent set in *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) when determining that individual officers many be held personally liable for TCPA violations. In that case, the Western District of Texas held:

"The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasively argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

7

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with defendant American Blastfax, Inc., for all TCPA damages in this lawsuit."
See: https://law.justia.com/cases/federal/district-courts/FSupp2/164/892/2459891/

**26.** In *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*, Case No. 12 c 5105, 2018 WL 3993409 (N.D. Ill. Aug. 21, 2018) the Court faced a summary judgment motion from the *Plaintiff* seeking to resolve issues of liability against Defendants–including personal liability against A-S Solutions' CEO Walter Huff– on a certified class involving 15,666 faxes that allegedly violated the TCPA. The Court adopted the *American Blastfax, Inc.* standard and held the CEO personally liable for the TCPA violations that occurred. See *Physicians Healthsource, Inc.* at *8 (citing the rule that "an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved."). The Court then found that Huff had personally participated in the faxes because he dictated the content of the faxes and authorized sending the faxes. This, the Court found, was sufficient to justify personal liability on Huff.

**27.** Defendant Mr. Fiore is personally liable under the "participation theory" of liability because he was the Principal owner of Merchant Direct, knew of Merchant Direct's violations, and directed employees and/or agents of Merchant Direct to continue making those violations.

**28.** This is because Defendant Mr. Fiore authorized and oversaw each of Merchant Direct's telemarketing processes and calls which were made on behalf of Merchant Direct.

8

29. Furthermore, Defendant Mr. Fiore is also personally liable because he were responsible for ensuring Merchant Direct's agents and/or employees' TCPA compliance.

**Factual Allegations**

**A. The Worsening Problem of Robocalls and Illegal Telemarketing**

30. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

31. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

32. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

33. In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

**34.** Recently, *The New York Times* reported extensively on the surging number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

### B. Defendants' Role in this Explosion of Illegal Robocalling

**35.** Plaintiff received all of the calls as alleged herein on his personal cellular telephone number, (484) 626-3942. Plaintiff's number has been successfully registered on the National Do-Not-Call registry since June 26, 2015, more than thirty-one (31) days prior to the call, and has also been successfully registered on the Pennsylvania Do-Not-Call list since May 15, 2018.

**36.** Merchant Direct provides loans to companies.

**37.** Merchant Direct uses telemarketing to promote its products and services.

**38.** Merchant Direct telemarketing efforts also include the use of automated dialing equipment to send automated, prerecord calls to consumers nationwide.

**39.** On June 13, 2018 at 6:44 PM EST, Plaintiff received a prerecorded call which displayed on Plaintiff's caller identification as "Unknown" and included the digits 100000000000.

**40.** Plaintiff heard a prerecorded message about business funding. The message asked Plaintiff to press 1, which Plaintiff did.

**41.** As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further

10

information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

**42.** Plaintiff heard a "bloop", which can be described as a "balloon-popping sound", before he was connected with "Leslie Osborne" at Merchant Direct.

**43.** Plaintiff then heard a scripted sales pitch about business funding.

**44.** During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. However, Plaintiff never consented to receiving any additional telemarketing calls.

**45.** As a result of this call, Leslie Osborne, leslie@merchantdirect.com, contacted the Plaintiff by e-mail attempting to get the Plaintiff to purchase Merchant Direct's services. Plaintiff received another e-mail which included a link to a "DocuSign" form.com, and asked Plaintiff to sign the form.

**46.** On June 14, 2018 at 4:09 PM EST, Plaintiff received a missed call from 609-333-7086.

**47.** This call disconnected before the Plaintiff had a chance to answer the phone.

**48.** A few seconds later, at 4:09 PM EST, Plaintiff received another missed call from 609-333-7086.

**49.** This call also disconnected before the Plaintiff had a chance to answer the phone.

**50.** In Plaintiff's experience, this strange behavior is indicative of an autodialer. Sometimes, due to technical malfunctions, an autodialer will place a call, then immediately disconnect, and place one or more calls back to the recipient. Therefore, Plaintiff alleges that both of these calls were made using an ATDS.

11

**51.** On or about June 14, 2018 at 4:19 PM EST, Plaintiff called 609-333-7086 back, in an attempt to ascertain who was calling.

**52.** Plaintiff heard a "bloop" machine noise, and was connected with "Matt Behrman", a senior account executive at Merchant Direct.

**53.** Plaintiff then heard a scripted sales pitch about business funding.

**54.** As a result of this conversation, "Matt Behrman", matt@merchantdirect.com, sent Plaintiff an e-mail at 4:26 PM EST trying to get the Plaintiff to sign up for Defendant's cash advance services.

**55.** "Matt" asked Plaintiff for permission to call back. Plaintiff did not consent to receive additional telemarketing calls, and specifically told "Matt" that he would call Merchant Direct back if he was interested.

**56.** On June 14, 2018 at 4:45 PM EST, despite Plaintiff's request not to receive any calls back, and his statement that he would call the Defendants back if he was interested, Plaintiff received a call back from Merchant Direct from 609-453-3381. This was a continuation of Merchant Direct's sales pitch to the Plaintiff about business funding.

**57.** Defendants then began relentlessly sending the Plaintiff multiple e-mails per day attempting to get the Plaintiff to purchase the Defendant's cash advance services.

**58.** On June 19, 2018 at 3:07 PM EST, Plaintiff received a call from 609-333-7086. Plaintiff hung up when he realized it was Merchant Direct calling again.

**59.** On June 19, 2018 at 3:07 PM EST, just a few seconds later, Plaintiff received a call from 609-333-7086. Plaintiff told "Leslie" that he was busy and was not interested.

**60.** On June 25, 2018 at 3:00 PM EST, Plaintiff received a call from 609-453-3380. Plaintiff answered and spoke with a representative from Merchant Direct. Plaintiff was busy and

hung up the phone, because he was not interested. Notably, Plaintiff did not give the Defendants permission to call back.

**61.** On June 28, 2018 at 12:21 PM EST, Plaintiff received another call from Merchant Direct from 609-333-7086. Plaintiff hung up once he realized it was Merchant Direct calling.

**62.** (484) 626-3942 is the only telephone number which Plaintiff owns.

**63.** Merchant Direct did not have the Plaintiff's prior express written consent to make these calls.

**64.** In fact, before filing this lawsuit, the Plaintiff wrote to Merchant Direct via e-mail on July 19, 2018 via e-mail asking if they had his prior express written consent to make the calls, but Merchant Direct did not provide any evidence of consent.

**65.** Plaintiff sues Mr. Fiore individually under the Responsible Corporate Officer Doctrine.

**66.** Mr. Fiore makes the day to day decisions for Merchant Direct.

**67.** The defendants' *modus operandi* was to incorporate and use ATDS to solicit people including Plaintiff.

**68.** The following is a spreadsheet listing dates and times that Plaintiff received telemarketing calls from the defendants:

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | | |
|---|---|---|---|---|
| Date: | Time (EST): | Caller ID: | Notes | ATDS Used? |
| 6/13/2018 | 6:44 PM | Unknown | Prerecorded message, connected with Leslie Osborne | Yes |
| 6/14/2018 | 4:09 PM | 609-333-7086 | Call ended before Plaintiff had a chance to answer | Yes |
| 6/14/2018 | 4:09 PM | 609-333-7086 | Call ended before Plaintiff had a chance to answer | Yes |

13

| | | | | |
|---|---|---|---|---|
| 6/14/2018 | 4:45 PM | 609-453-3381 | | No |
| 6/19/2018 | 3:07 PM | 609-333-7086 | Spoke to Leslie Osborne, told her I was busy and hung up | No |
| 6/19/2018 | 3:07 PM | 609-333-7086 | Spoke to Leslie Osborne, told her I was busy and was not interested | No |
| 6/25/2018 | 3:00 PM | 609-453-3380 | | No |
| 6/28/2018 | 12:21 PM | 609-333-7086 | | No |

**69.**  Defendant Gallant Ventures LLC, c/o Daniel Fiore, 4 Hopper Ave, Barnegat NJ 08005 is the registrant of the website www.merchantdirect.com.

**70.**  At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

**71.**  Prior to these unsolicited calls, the Plaintiff has never done any business with Merchant Direct and Plaintiff never provided Merchant Direct with his cellular telephone number.

**72.**  Plaintiff also requested in his e-mail to have his number placed on Merchant Direct's internal Do-Not-Call list, and requested to receive a copy of Merchant Direct's internal company Do-Not-Call policy.

**73.**  Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**74.**  Pursuant to 47 CFR § 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

14

**75.** Pursuant to 47 CFR § 64.1200, a telemarketer is required, upon request, to put a consumer's telephone number on their internal "Do-Not-Call list" upon request.

**76.** Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list, in violation of 47 CFR § 64.1200, despite Plaintiff's written correspondence.

**77.** To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Merchant Direct inquiring about the calls before filing this lawsuit.

**78.** Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**79.** Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is a residential telephone that is used for personal purposes.

**80.** These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

15

**81.** Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action
### First Cause of Action
(Negligent Violation of the TCPA "RoboCall/ ATDS Call" Prohibition, 47 U.S.C. § 227 et seq.)

**82.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**83.** As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**84.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

**85.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**86.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

**87.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**88.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**89.** As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**90.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**91.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**92.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

**93.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**94.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the

17

paragraphs above.

**95.** As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**96.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**97.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**98.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**99.** As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**100.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**101.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

<u>**WHEREFORE, Plaintiff prays for relief against defendants, as follows:**</u>
### III. <u>Prayer for Relief</u>

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$19,500** (Eight counts of "Sales call to a number registered on the National Do-Not-Call Registry", Three counts each of "Robocall/ATDS call", and one count each of "Failure to provide a copy of Defendant's Do-Not-Call Policy" and "Failure to Put Plaintiff's Number on Defendant's Do-Not-Call list, with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

### IV. <u>Demand for Jury</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 30, 2018  *James E Shelton*

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

19